**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. -Gainesville

JUL 2 4 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | | |
|---|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA f/k/a THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS | ) ) ) ) ) ) ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | 2 09 - C V - 0 1 2 1 -WCO |
| L.H.R. FARMS, INC., HULSEY ENVIRONMENTAL SERVICES, INC., JOHN B. HULSEY, JR., DENNIS DOVER, RANDY COOK, and JONATHON HULSEY | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs The Travelers Indemnity Company of America and Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois (collectively "Travelers") for their Complaint against L.H.R. Farms, Inc. ("LHR"), Hulsey Environmental Services, Inc. ("HES"), John B. Hulsey Jr., ("John Hulsey"), Dennis Dover ("Dover"), Randy Cook ("Cook"), and Jonathon Hulsey ("Jonathon Hulsey") (collectively the "Defendants") allege as follows:

## Introduction

1.

This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 for the purpose of resolving an actual controversy between Travelers and Defendants arising out of certain insurance policies issued by Travelers to LHR and HES. Travelers seeks a declaration that it has no obligation to defend or indemnify the Defendants in connection with underlying litigation alleging that LHR and HES's processing, storage, and dispersal of septic waste at a site in White County, Georgia has resulted in the discharge of pollutants into the environment.

## The Parties

2.

Plaintiff The Travelers Indemnity Company of America is a Connecticut corporation with its principal place of business at One Tower Square, Hartford, Connecticut, 06183, and is duly authorized to conduct business in the State of Georgia.

3.

Plaintiff Travelers Property Casualty Company of America f/k/a The Travelers Indemnity Company of Illinois is a Connecticut corporation with its principal place of business at One Tower Square, Hartford, Connecticut, 06183, and is duly authorized to conduct business in the State of Georgia.

4.

Defendant L.H.R. Farms, Inc. is a Georgia corporation with its principal place of business at 1430 Calvary Church Road, Gainesville, Georgia, 30507, and may be served with process by serving its registered agent, John B. Hulsey, Jr. at 3230 Dunlap Drive, Gainesville, Georgia 30506.

5.

Defendant Hulsey Environmental Services, Inc. is a Georgia corporation with its principal place of business at 1430 Calvary Church Road, Gainesville, Georgia, 30507, and may be served with process by serving its registered agent, Edward L. Hartness, at 620 Spring Street, Gainesville, Georgia 30501.

6.

Defendant John B. Hulsey, Jr. is an individual who, upon information and belief resides in Georgia and whose address for service is 3230 Dunlap Drive, Gainesville, Georgia 30506.

7.

Defendant Dennis Dover is an individual who, upon information and belief resides in Georgia and whose address for service is 506 Garrison Road, Homer, Georgia 30546.

752048-1                                    3

8.

Defendant Randall Cook is an individual who, upon information and belief resides in Georgia and whose address for service is 3220 Sydenham Court, Cumming, Georgia 30041.

9.

Defendant Jonathon Hulsey is an individual who, upon information and belief resides in Georgia and whose address for service is 6008 Walden Pond Road, Gainesville, Georgia 30506.

### Jurisdiction and Venue

10.

This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332.  Complete diversity exists between Travelers, on the one hand and all Defendants on the other hand.  The amount in controversy exceeds $75,000.00, exclusive of interests and costs.

11.

This Court has personal jurisdiction over all Defendants.

12.

Venue is proper in the Northern District of Georgia, Gainesville Division, the judicial district and division in which one or more of the Defendants reside, pursuant to 28 U.S.C. §§ 1391 (a) and (c) and Northern District L.R. 3.1 B. (1).

13.

This action is properly filed pursuant to 28 U.S.C. § 2201 because an actual controversy of a ripe and justiciable nature exists between Travelers and Defendants involving the scope and extent of Travelers obligations to defend and indemnify Defendants in connection with the claims being asserted in the underlying litigation.

**Facts**

**The Underlying Lawsuit**

14.

On or around August 1, 2008, a group of plaintiffs (the "Underlying Plaintiffs") filed suit against the Defendants in the Superior Court of White County, State of Georgia, styled *Darren Alexander, et al. v. L.H.R. Farms, Inc., et al.*, Civil Action File No. 2008-CV-0577-MM.  A true and correct copy of the Complaint filed in the Underlying Lawsuit is attached as Exhibit "A."

15.

In the Underlying Lawsuit, the Underlying Plaintiffs allege that they are residents of White, County Georgia whose properties and homes and/or businesses are located either directly adjacent to or nearby the LHR site and facility.  (Exh. "A" ¶ 1).

16.

The Underlying Lawsuit alleges that the LHR facility comprises approximately 350 acres located at 513 Joe Turner Road, Cleveland, Georgia 30528 (the "LHR Site"). (*Id.* ¶ 12).

17.

The Underlying Lawsuit alleges that, at the LHR Site, the Defendants "receive commercial and domestic waste, including, but not limited to septic and grease trap waste, from customers." (*Id.* ¶ 13).

18.

The Underlying Lawsuit alleges that "Defendants dispose of such waste by processing the waste at the LHR facility and then spraying, or otherwise applying, the resulting wastewater onto the land at the LHR Site." (*Id.* ¶ 14).

19.

The Underlying Lawsuit alleges that "[i]n addition to directly managing, controlling and/or ratifying, overseeing and participating in operations at LHR, upon information and belief, [HES] disposes of waste and wastewater from its hauling, plumbing and repair services at the LHR facility." (*Id.* ¶ 15).

20.

The Underlying Lawsuit alleges that "[l]and application of septage has occurred at the LHR Site since 1996.  As early as 1997, Defendants have received and/or been notified of complaints from local citizens concerning pools of septage on the ground, septage running off of [*sic*] LHR Site and onto neighboring properties and overwhelming odors coming from the facility."  (*Id.* ¶ 16).

21.

The Underlying Lawsuit alleges that "[i]n approximately May of 2007, the Georgia Department of Natural Resources Environmental Protection Division ("EPD") began receiving odor complaints concerning the LHR facility.  Since October 2007, EPD has received over 100 complaints from local citizens.  EPD has notified LHR of these complaints."  (*Id.* ¶ 18).

22.

The Underlying Lawsuit alleges that "[i]n June, 2007 EPD became aware that LHR was using spray irrigation to apply the septic waste to land.  Spray irrigation wastewater requires a Land Application System (LAS) permit as authorized under Chapter 391-3-6-11 of EPD's Rules and Regulations for Water Quality Control.  As LHR was not permitted to utilize spray irrigation to dispose of its septic waste, EPD required the unauthorized spray irrigation to cease on or around June 15, 2007."  (*Id.* ¶ 19).

752048-1

23.

The Underlying Lawsuit alleges that "[o]n January 17, 2008, EPD conducted an inspection of the LHR Site.  This inspection and the subsequent file review identified violations of the Consent Order by LHR."  (*Id.* ¶ 21).

24.

The Underlying Lawsuit alleges that "[t]o date, EPD has identified multiple permit and Consent Order violations, including but not limited to: spraying in the rain; accepting biosolids from the digester of a water pollution control plant; accepting wastewater from a drycleaner; several failures to sample; stockpiling and storing grease and septage; failing to adequately screen domestic inorganic material; storing chemicals; failing to meet fecal effluent and groundwater nitrate limitation and exceeding the maximum daily disposal amount."  (*Id.* ¶ 22).

25.

The Underlying Lawsuit alleges that "[o]ffensive odors have emanated and continue to emanate from the LHR Site."  (*Id.* ¶ 24).

26.

The Underlying Lawsuit alleges that "[t]he offensive odors invade [Underlying] Plaintiffs' properties and prevent Plaintiffs from enjoying outdoor activities." (*Id.* ¶ 25).

27.

The Underlying Lawsuit alleges that "[l]arge fly, insect, vermin and buzzard populations feed on the waste material at the LHR Site and have invaded and continue to invade Plaintiffs' properties." (*Id*. ¶ 26).

28.

The Underlying Lawsuit alleges that "[s]everal [Underlying] Plaintiffs have suffered and continue to suffer from illnesses and symptoms, upon information and belief, related to exposure to emissions from the LHR Site." (*Id*. ¶ 27).

29.

The Underlying Lawsuit alleges that "Defendants' activities have caused and continue to cause harmful chemicals to be emitted from the LHR site into the environment in and around the LHR Site, including Plaintiffs' properties."   (*Id*. ¶ 28).

30.

The Underlying Lawsuit alleges that "[Underlying] Plaintiffs placed Defendants on notice of the problems they experienced, and continue to experience, due to Defendants' activities at the LHR Site; however, Defendants have refused to cease their activities, including but not limited to spray irrigation, or to change their practices so as to eliminate or minimize the injury to [Underlying] Plaintiffs and their properties." (*Id*. ¶ 29).

31.

The Underlying Lawsuit alleges that "Defendants and their agents/representatives have failed and refused to comply with [Underlying] Plaintiffs' requests to cease this harmful and wrongful conduct and to repair the injuries caused by the application of septic waste to land at the LHR Site. This delay in addressing [Underlying] Plaintiffs' injuries not only subjects [Underlying] Plaintiffs and their properties to further and increased intolerable odors, exposure to harmful chemicals and fly, insect, vermin and buzzard infestations, but it also creates undue emotional stress to the [Underlying] Plaintiffs." (*Id.* ¶ 30).

32.

The Underlying Complaint asserts causes of action against the Defendants for nuisance, trespass, negligence and negligence per se, punitive damages, and attorney's fees. (*Id.* ¶¶ 32-55).

33.

The Defendants first notified Travelers of the claims asserted against the Defendants by the Underlying Plaintiffs on or about October 13, 2008.

34.

Travelers is defending the Defendants in the Underlying Lawsuit under a full reservation of rights.

## **Policies Issued to LHR and Misrepresentation by LHR**

35.

The Travelers Indemnity Company of America issued a Farm/Ranch Policy ("LHR Farm Policy") to L.H.R. Farms d/b/a Rockin "H" Farms, Policy No. 700-4257L053-TIA-07, with a policy period from 12/10/07 to the date of the policy's cancellation on 6/30/08. A copy of the declarations and the pertinent portions of the LHR Farm Policy are attached as Exhibit "B."

36.

The Travelers Property Casualty Company of America issued an Excess Liability Policy ("LHR Excess Policy") to L.H.R. Farms d/b/a Rockin "H" Farms, Policy No. ZFS-EX-4257L053-TIL-07, with a policy period from 12/10/07 to the date of the policy's cancellation on 6/30/08. A copy of the LHR Excess Policy is attached as Exhibit "C."

37.

In its application for insurance for the LHR Farm Policy and the LHR Excess Policy, a copy of which is attached hereto as Exhibit "C," LHR represented to Travelers that the premises on Joe Turner Road consisted of a farm/dwelling.

752048-1                                           11

38.

In its application for insurance, LHR represented that the farming operations at the premises on Joe Turner Road consisted of "Equine & Cattle/Poultry-leasing 4 chicken houses/Grass Crop For Horses."

39.

In its application for insurance, LHR represented that farming was the major source of its income.

40.

In its application for insurance, LHR failed to disclose any non-farming activities.

41.

In its application for insurance, LHR stated that there were no unusual hazards on the insured premise.

42.

At no time did LHR disclose to Travelers that it was involved in the receipt, treatment, storage, or dispersal of waste, either at the premises on Joe Turner Road or otherwise.

43.

Based on the representation by LHR that it was operating a farm at the premises on Joe Turner Road, Travelers issued the LHR Farm Policy and the LHR Excess Policy.

44.

The premium charged to LHR for the LHR Farm Policy and the LHR Excess Policy and the risk exposure underwritten for those policies reflected LHR's representation that it was operating a farm at the premises on Joe Turner Road.

45.

The declarations pages of the LHR Farm Policy state that the policy is a "Farm/Ranch Policy."

46.

The declarations pages of the LHR Farm Policy state that the occupancy of the premises at Joe Turner Road is a "farm."

47.

The declarations pages of the LHR Excess Policy states that the underlying insurance policy, (the LHR Farm Policy) offers "farm liability" coverage.

48.

The LHR Farm Policy contains a provision stating:

By accepting this policy you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

49.

The LHR Excess Policy contains a provision stating:

By accepting this policy you agree:

a.  The statements in the Declarations and any subsequent notice relating to "underlying insurance" are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

50.

On or around May, 14, 2008, Travelers discovered that LHR was involved in operations other than farming, including septic handling of waste.

51.

After discovery of those operations, Travelers cancelled the LHR Farm Policy and the LHR Excess Policy effective 6/30/08.

52.

Had Travelers known that LHR was involved in the receipt, treatment, storage, or dispersal of waste, Travelers would not have issued the LHR Farm Policy or the LHR Excess Policy.

### The LHR Farm Policy
53.

The LHR Farm Policy states, in pertinent part, with respect to which individuals or entities are insureds under the policy:

> 1. If you are designated in the Declarations as
>
> ...
>
> c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your "farming" operations. Your managers are insureds, but only with respect to their duties as your managers.

54.

The LHR Farm Policy defines "farming" as:

> the operation of an agricultural or aquacultural enterprise, and includes the operation of roadside stands, on your farm premises, maintained solely for the sale of farm products produced principally by you. Unless specifically indicated in the Declarations, "farming" does not include:
>
> (1) Retail activity other than that described above; or
>
> (2) Mechanized processing operations.

55.

The General Liability Coverage Form in the LHR Farm Policy contains an

Insuring Agreement, which states, in pertinent part:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

…

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage

occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

752048-1

56.

The LHR Farm Policy contains an endorsement entitled Basic Farm Premises Liability, which states, in pertinent part:

> Subject to the provisions of this endorsement, insurance under the General Liability Coverage Form applies with respect to liability arising out of the ownership, use or maintenance of "farm premises." The terms ownership, use or maintenance include operations necessary or incidental to ownership, use or maintenance.

57.

The LHR Farm Policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time."

58.

The LHR Farm Policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> ...

752048-1

18

59.

The LHR Farm Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

60.

The LHR Farm Policy defines "farm premises" as:

> The location identified as such in the Declarations and operated for "farming" purposes …

61.

The Declarations pages of the LHR Farm Policy identify 254 Joe Turner Road, White County, Cleveland, Georgia 30528, as farm premises.

62.

The LHR Farm Policy contains a Conditions section that sets forth the insured's duties in the event of occurrence, offense, claim or suit:

   a.   You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim…

   b.   If a claim is made or "suit" is brought against any insured, you must:

   > (1)   immediately record the specifics of he claim or "suit" and the date received; and

   > (2)   notify us as soon as practicable.

You must see to it that we receive written notice of
the claim or "suit" as soon as practicable.

c.     You and any other involved insured must:

(1)     immediately send us copies of any
demands,   notices,  summonses,  or  legal
papers   received  in  connection  with  the
claim or "suit"…

63.

The LHR Farm Policy contains an exclusion entitled "Pollution," which, as

amended by endorsement, states, in pertinent part:

This insurance does not apply to:

(1) "Bodily injury" or "property damage" arising out of
the actual, alleged or threatened discharge, dispersal,
seepage, migration, release or escape of "pollutants":

(a)     At or from any premises, site or location
which  is  or  was  at  any  time  owned  or
occupied by, or rented or loaned to, any
insured. …

…

(b)     At or from any premises, site or location
which is or was at any time used by or for
any  insured  or  others  for  the  handling,
storage, disposal, processing or treatment of
waste;

(c)     Which are or were at any time transported,
handled,  stored,  treated,  disposed  of,  or
processed as waste by or for:

(i)     Any insured; or

(ii)   Any person or organization for whom you may be legally responsible; or

(d)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf or performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. ...

(e)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2)  Any loss, cost or expense arising out of any:

(a)   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b)   Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

64.

The LHR Farm Policy defines "pollutant" as:

any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

65.

The LHR Farm Policy contains an exclusion entitled "Expected Or Intended Injury," which states, in pertinent part:

This insurance does not apply to:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured....

66.

The LHR Farm Policy contains an exclusion entitled "Damage to Property," which states, in pertinent part:

This insurance does not apply to:

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property ...

(5)  That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations

....

752048-1

22

67.

The LHR Farm Policy contains an exclusion entitled "Damage To Impaired Property or Property Not Physically Injured," which states, in pertinent part:

> This insurance does not apply to:
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" ...

68.

The LHR Farm Policy contains an exclusion entitled "Fungi or Bacteria Exclusion-Liability," which states, in pertinent part:

> This insurance does not apply to:
>
> …
>
> a. "Bodily injury" and "property damage" that would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any "insured" or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria
that are, are on, or are contained in, a good or product
intended for consumption.

69.

The LHR Farm Policy defines "fungi" as "any type or form of fungus,
including mold or mildew, and any mycotoxins, spores, scents or byproducts
produced or released by fungi."

70.

The LHR Farm Policy contains an exclusion titled "Exclusion of Loss Due
to Virus or Bacteria," which states, in pertinent part:

We will not pay for loss or damage caused by or resulting
from any virus, bacterium or other microorganism that
induces or is capable of inducing physical distress, illness
or disease.

**The LHR Excess Policy**

71.

The LHR Excess Policy states, with respect to which individuals or entities
are an insured:

Any person or organization qualifying as an insured
under any policy of the "controlling underlying
insurance" is an "insured" under this policy.

72.

The LHR Excess Policy's Insuring Agreement states, in pertinent part:

**1. INSURING AGREEMENT**

a.  We will pay on behalf of the insured those sums, in excess of the total amount payable of all the limits shown on the Declarations for the applicable "underlying insurance", that the insured becomes legally obligated to pay as damages because of injury or damage to which this insurance applies and which occurs or is committed during the policy period, provided that the "controlling underlying insurance" also applies, or would apply but for the exhaustion of its applicable limits of insurance.

b.  This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "controlling underlying insurance", except with respect to any provisions to the contrary contained in this insurance.

73.

The LHR Excess Policy defines "controlling underlying insurance" as "the policy or policies of insurance as stated on the Declarations, including any endorsements to such policies."

74.

The Declarations of the LHR Excess Policy list the LHR Farm Policy as the controlling underlying insurance policy.

75.

The LHR Excess Policy contains a Conditions section that sets forth the insured's duties in the event of occurrence, offense, claim or suit:

a.   You must see to it that we are notified promptly of an "occurrence" or an offense which may result in a claim under this insurance....

b.   If a claim is made or "suit" is brought against any insured which may result in a claim against this insurance, you must see to it that we receive prompt written notice of the claim or suit.

c.   The insured must:

   ...

   2.   Comply with the terms of the "controlling underlying insurance"....

## Policies Issued to Hulsey Environmental Services

76.

The Travelers Indemnity Company of America issued the following three

Commercial General Liability Policies to Hulsey Environmental Services, Inc.:

a.   Policy No. DT-CO-713K2820-TIA-97, with a policy period from 1/26/97

to 1/26/98 (the "'97 HES CGL Policy");

b.   Policy No. DT-CO-713K2820-TIA-98, with a policy period from 1/26/98

to 1/26/99 (the "'98 HES CGL Policy"); and

c.   Policy No. DT-CO-713K2820-TIA-98, with a policy period from

1/26/99 to 1/26/00 (the "'99 HES CGL Policy").

The three Commercial General Liability Policies will be collectively referred to

herein as the "HES CGL Policies."  Copies of the declarations and the pertinent

portions of the '97 HES CGL Policy and the '98 HES CGL Policy (which contain

the same pertinent forms) are attached hereto as Exhibit "D."   Copies of the declarations and the pertinent portions of the '99 HES CGL Policy are attached hereto as Exhibit "E."

77.

Travelers Property Casualty Company of America, f/k/a The Travelers Indemnity Company of Illinois issued the following three Commercial Excess Liability Policies to Hulsey Environmental Services:

    a. Policy No. DT-CUP-713K285-6-TIL-97, with a policy period from 1/26/97 to 1/26/98 (the "'97 HES Excess Policy");

    b. Policy No. CUP-713K285-6-TIL-98, with a policy period from 1/26/98 to 1/26/99 (the "'98 HES Excess Policy"); and

    c. Policy No. DTSM-CUP-713K285-6-TIL-99, with a policy period from 1/26/99 to 1/26/00 (the "'99 HES Excess Policy")

The three Commercial Excess Liability Policies will be referred to collectively herein as the "HES Excess Policies."   Copies of the declarations and the pertinent portions of all three HES Excess Policies (which contain the same pertinent forms) are attached hereto as Exhibit "F."

## **The HES CGL Policies**

78.

The HES CGL Policies contain the following or substantially similar language:

1. If you are designated in the declarations as

...

c.   An organization other than a partnership or joint venture, you are an insured.  Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a.   Your employees, other than your executive officers, but only for acts within the scope of their employment by you....

79.

The General Liability Coverage Forms in the HES CGL Policies contains the following or substantially similar language:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. ...

...

752048-1

28

b. This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

(2)     The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

80.

The HES CGL Policies define "bodily injury" as "bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time."

81.

The HES CGL Policies define "property damage" as:

a.   physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

82.

The HES CGL Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."

83.

The '97 HES CGL Policy and the '98 HES CGL Policy contain a Conditions section that sets forth the insured's duties in the event of occurrence, offense, claim or suit:

> a.   You must see to it that we or one of our authorized agents are notified as soon as practicable of an "occurrence" or offense which may result in a claim. ...
>
> b.    If a claim is made or "suit" is brought against any insured, you must:
>
>   ...
>
>> (2)  Notify us as soon as practicable.  You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> c.    You and any other involved insured must:
>
>> (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; ...

84.

The '99 HES CGL Policy contains a Conditions section that sets forth the insured's duties in the event of occurrence, offense, claim or suit:

a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. Knowledge of an "occurrence" or an offense by your "employees" shall not, in itself, constitute knowledge to you unless your partners, executive officers, directors, members or insurance manage shall have actually received notice. …

We will not deny coverage based solely on your delay in reporting an "occurrence" or offense unless we are prejudiced by your delay.

…

b.  If a claim is made or "suit" is brought against any insured, you and any other involved insured must:

…

(2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.  You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

…

85.

The '97 HES CGL Policy and the '98 HES CGL Policy contain an exclusion

which states, in pertinent part and as amended by endorsement:

This insurance does not apply to:

e.     (1)     "Bodily injury" or "property damage"
               arising out of the actual, alleged or
               threatened discharge, dispersal, seepage,
               migration, release or escape of pollutants:

               (a)     At or from any premises site or
                       location which is or was at any time
                       owned or occupied by, or rented or
                       loaned to any insured.

               (b)     At or from any premises, site or
                       location which is or was at any time
                       used by or for any insured or others
                       for the handling, storage, disposal,
                       processing or treatment of waste;

               (c)     Which are or were at any time
                       transported, handled, stored, treated,
                       disposed of, or processed as waste by
                       or for any insured or any person or
                       organization for whom you may be
                       legally responsible; or

               (d)     At or from any premises, site or
                       location on which any insured or any
                       contractors or subcontractors working
                       directly or indirectly on any insured's
                       behalf are performing operations:

                       (i)     if the pollutants are brought on
                               or to the premises, site or
                               location in connection with

such operations by such insured, contractor or subcontractor; or

(ii)    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

(2)    Any loss, cost or expense arising out of any:

(a)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditions or reclaimed.

86.

The '99 HES CGL Policy contains an exclusion entitled "Pollution" which

states, in pertinent part and as amended by endorsement:

This insurance does not apply to:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied or managed by, or rented to or loaned to, any insured;

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

  (e) If any such discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from any premises, site or location commences in whole or in part before the policy

period.   All discharges, dispersals, seepages, migrations, releases or escapes of "pollutants" at or from any premises, site or location shall be deemed to commence at the time of the initial discharge, release or escape.

(2)   (This insurance also does not apply to) "pollution costs".

87.

The '99 HES CGL Policy defines "pollutants" as any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes acids, alkalis, chemicals or waste.   Waste includes materials to be recycled, reconditioned, or reclaimed."

88.

The '99 HES CGL Policy defines "pollution costs" as:

a.   Any request, demand or order that the insured test for, monitor, cleanup, remove, contain, treat, detoxify, or in any way respond to or assess the effects of "pollutants"; or

b.   Any claim or "suit" by or on behalf of a governmental authority demanding that the insured test for, monitor, cleanup, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of "pollutants".

89.

The HES CGL Policies contain an exclusion which states:

This insurance does not apply to:

35

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

90.

The HES CGL Policies contain an exclusion which states, in pertinent part:

This insurance does not apply to:

"Property damage" to:

(1) Property you own, rent, or occupy

...

(6) That particular part of any property:

(a) On which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations if the "property damage" arises out of those operations

....

91.

The HES CGL Policies contain an exclusion which states, in pertinent part:

This insurance does not apply to:

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" ....

## The HES Excess Policies

92.

The HES Excess Policies state, in pertinent part, with respect to which individuals or entities are insureds under the policies:

> If you are designated in the Declarations as:
>
> ...
>
> c.   An organization other than a partnership or joint venture, you are an insured.
>
> ...
>
> h.   Any other person or organization insured under any policy of the "underlying insurance."  This grant is subject to all the limitations upon coverage under such policy other than the limits of the "underlying insurers" liability.

93.

The HES Excess Policies define "underlying insurance" as:

> the policies listed in the Schedule of Underlying Insurance ...

94.

The Schedule of Underlying Insurance for the '97 HES Excess Policy lists the '97 HES CGL Policy as the underlying general liability coverage.

95.

The Schedule of Underlying Insurance for the '98 HES Excess Policy lists the '98 HES CGL Policy as the underlying general liability coverage.

96.

The Schedule of Underlying Insurance for the '99 HES Excess Policy lists the '99 HES CGL Policy as the underlying general liability coverage.

97.

The HES Excess Policies' Insuring Agreement states, in pertinent part:

    a.    We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies. This insurance applies only to:

        (1)    "Bodily injury" or "property damage":

            (a)    Occurring during the policy period; and

            (b)    Caused by an "occurrence"; and

        ...

    b.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

    c.    "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

...

98.

The HES Excess Policies define "bodily injury" as: "bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time."

99.

The HES Excess Policies define "property damage" as: "physical injury to tangible property, including all resulting loss of use of that property.

100.

The HES Excess Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

101.

The HES Excess Policies contain a Conditions section that sets forth the insured's duties in the event of occurrence, offense, claim or suit:

> a.  You must see to it that we are notified promptly of an "occurrence" or an "offense" which may result in a claim under this insurance. ...
>
> ...
>
> b.  If a claim is made or "suit" is brought against any insured which may result in a

39

claim against this insurance, you must see to it that we receive prompt written notice of the claim or "suit".

c.    The insured must:

…

    (2)    Comply with the terms of the "underlying insurance"; …

…

102.

The HES Excess Policies contain an exclusion which states the following:

This insurance does not apply to:

f.    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, or any loss, cost, expense or damages resulting therefrom, but this exclusion does not apply to "bodily injury" or "property damage" to which any policy listed in the schedule of underlying insurance, or any renewal or replacement thereof, applies or would apply but for the exhaustion of its limits of liability.

"Pollutants" means one or more solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

103.

The HES Excess Policies contain an exclusion which states the following:

This insurance does not apply to:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

104.

The HES Excess Policies contain an exclusion which states, in pertinent part, the following:

...this insurance does not apply to "property damage" to:

1. property you own, rent, or occupy ...

105.

The HES Excess Policies contain an exclusion which states, in pertinent part, the following:

This insurance does not apply to:

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" ....

## COUNT I: DECLARATORY RELIEF UNDER THE LHR POLICIES

106.

Travelers hereby incorporates by reference all prior allegations as if fully set forth herein.

752048-1

41

107.

Travelers does not have any obligation to defend or indemnify the Defendants under the LHR Farm Policy and/or the LHR Excess Policy (collectively referred to as the "LHR Policies") for any damages, losses, claims, costs, or expenses arising out of or related to the claims asserted in the Underlying Lawsuit on numerous grounds, including, but not limited to:

a.  To the extent that any of the insureds under the LHR Policies misrepresented the nature of the risk to be insured under the LHR Policies, the policies are void and there is no coverage for any of the Defendants;

b.  To the extent that any of the Defendants are not an insured under the LHR Policies, there is no coverage for any of those Defendants.

c.  To the extent that any of the insureds under the LHR Policies have failed to satisfy all terms, conditions, and obligations of the LHR Policies, including, but not limited to, the satisfaction of all conditions, and particularly (but without limitation) the condition requiring the insured in the event of an occurrence to provide written notice to Travelers as soon as practicable and requiring the insured to immediately forward every demand, notice, summons, or other process received, there is no coverage;

d.  To the extent that the Underlying Plaintiffs are not seeking any sums that any Defendant will become "legally obligated to pay as damages" there is no coverage;

e.  To the extent that the claims asserted in the Underlying Lawsuit do not arise out of Defendants' farming operations at the designated farm premises, there is no coverage;

f.  To the extent that the claims asserted in the Underlying Lawsuit do not constitute "property damage" caused by an "occurrence," there is no coverage;

g.  To the extent that the claims asserted in the Underlying Lawsuit do not constitute "bodily injury" as that term is defined by the LHR Policies, there is no coverage;

h.  To the extent that any insured was aware of any alleged "bodily injury" or "property damage" occurring prior to the initiation of any of the LHR Policies, there is no coverage;

i.  To the extent that the damages allegedly suffered by the Underlying Plaintiffs occurred outside the period of the LHR Policies, there is no coverage;

j.  To the extent that the damages allegedly suffered by the Underlying Plaintiffs would not have occurred in whole or in part but for the

actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants," as that term is defined by the LHR Policies, there is no coverage;

k.      To the extent that the damages allegedly suffered by the Underlying Plaintiffs were expected or intended by any insured under the LHR Policies, there is no coverage;

l.      To the extent that any of the Underlying Plaintiffs or any of the Defendants seek recovery for damage to property owned by any insured, for repairs to any property owned by any insured in order to prevent damage to another's property, or for damage to property on which the insured is performing operations, there is no coverage;

m.      To the extent that any of the damages allegedly suffered by the Underlying Plaintiffs consists of damage to property not physically injured arising out of a defect or a dangerous condition in "your work," as that term is defined in the LHR Policies, there is no coverage;

n.      To the extent that any of the damages allegedly suffered by the Underlying Plaintiffs would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any fungi or

bacteria, or to the extent that any of the loss, cost or expense sought by the Underlying Plaintiffs or any Defendant arises out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to, or assessing the effects of fungi or bacteria, there is no coverage;

o.  To the extent that any of the damages allegedly suffered by the Underlying Plaintiffs were caused by or results from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease, there is no coverage under the LHR Policies;

p.  Travelers duty to reimburse or indemnify the Defendants with respect to any claim or suit, if any, is subject to the per occurrence limits, to the annual aggregate limits, and to all other limitations of liability contained in the LHR Policies.

q.  There is no coverage under the LHR Policies for any punitive damages, fines, or penalties alleged or ultimately awarded against the Defendants;

r.  Travelers does not have any obligation to defend or indemnify the Defendants for damages, losses, claims, costs, or expenses arising out

of or related to the Underlying Plaintiffs' claims because numerous other terms, conditions, and exclusions of the LHR Policies preclude coverage.

## COUNT II: DECLARATORY JUDGMENT UNDER THE HES POLICIES

### 108.

Travelers hereby incorporates by reference all prior allegations as if fully set forth herein.

### 109.

Travelers does not have any obligation to defend or indemnify the Defendants under the HES CGL Policies or the HES Excess Policies (collectively referred to as the "HES Policies") for any damages, losses, claims, costs, or expenses arising out of or related to the claims asserted in the Underlying Lawsuit on numerous grounds, including, but not limited to:

a.   To the extent that any of the Defendants are not an insured under the HES Policies, there is no coverage for any of those Defendants.

b.   To the extent that any of the insureds under the HES Policies have failed to satisfy all terms, conditions, and obligations of the HES Policies, including, but not limited to, the satisfaction of all conditions, and particularly (but without limitation) the condition requiring the insured in the event of an occurrence to provide written

notice to Travelers as soon as practicable and requiring the insured to immediately forward every demand, notice, summons, or other process received, there is no coverage;

c. To the extent that the Underlying Plaintiffs are not seeking any sums that any Defendant will become "legally obligated to pay as damages" there is no coverage;

d. To the extent that the claims asserted in the Underlying Lawsuit do not constitute "property damage" caused by an "occurrence," there is no coverage;

e. To the extent that the claims asserted in the Underlying Lawsuit do not constitute "bodily injury" as that term is defined by the HES Policies, there is no coverage;

f. To the extent that any insured was aware of any alleged "bodily injury" or "property damage" occurring prior to the initiation of any of the HES Policies, there is no coverage;

g. To the extent that the damages allegedly suffered by the Underlying Plaintiffs occurred outside the period of the HES Policies, there is no coverage;

h. To the extent that the damages allegedly suffered by the Underlying Plaintiffs would not have occurred in whole or in part but for the

actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants," as that term is defined by the HES Policies, there is no coverage;

i.    To the extent that the damages allegedly suffered by the Underlying Plaintiffs were expected or intended by any insured under the HES Policies, there is no coverage;

j.    To the extent that any of the Underlying Plaintiffs or any of the Defendants seek recovery for damage to property owned by any insured, for repairs to any property owned by any insured in order to prevent damage to another's property, or for damage to property on which the insured is performing operations, there is no coverage;

k.    To the extent that any of the damages allegedly suffered by the Underlying Plaintiffs consists of damage to property not physically injured arising out of a defect or a dangerous condition in "your work," as that term is defined in the HES Policies, there is no coverage;

l.    Travelers duty to reimburse or indemnify the Defendants with respect to any claim or suit, if any, is subject to the per occurrence limits, to the annual aggregate limits, and to all other limitations of liability contained in the HES Policies.

752048-1                             48

m.    There is no coverage under the HES Policies for any punitive damages, fines, or penalties alleged or ultimately awarded against the Defendants;

n.    Travelers does not have any obligation to defend or indemnify the Defendants for damages, losses, claims, costs, or expenses arising out of or related to the Underlying Plaintiffs' claims because numerous other terms, conditions, and exclusions of the HES Policies preclude coverage.

WHEREFORE, Travelers demands judgment as follows:

a.    For a declaration that Travelers has no duty under either the LHR Policies or the HES Policies to defend, indemnify, or to reimburse the Defendants or otherwise pay for any damages, losses, claims, costs, or expenses arising out of the claims asserted in the Underlying Lawsuit;

b.    For a reimbursement from the Defendants of all costs paid by Travelers in connection with the defense of the Defendants in the Underlying Lawsuit;

c.    For the costs of this suit; and

d.    For such other and further relief as this Court may deem just and proper.

Respectfully submitted this _23rd_ day of _July_, 2009.

WEISSMAN, NOWACK, CURRY & WILCO, P.C.

Linda B. Foster
Georgia Bar Number 081535
Rahul Karnani
Georgia Bar Number 407977
*Attorneys for Plaintiffs The Travelers Indemnity
Company of America and Travelers Property
Casualty Company of America f/k/a The Travelers
Indemnity Company of Illinois*

One Alliance Center
3500 Lenox Road, 4th Floor
Atlanta, Georgia 30326
(404) 926-4500
Fax (404) 926-4700